UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ISAIS RANDOLPH,

    Plaintiff,

    v.                                        Case No. 21-CV-681-SCD

CARGILL COCOA AND CHOCOLATE NORTH AMERICA,

    Defendant.

## DECISION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Isais Randolph claims that his former employer, Cargill Cocoa and Chocolate North America, failed to accommodate his disability and discriminated against him in the terms and conditions of his employment, in violation of the Americans with Disability Act (ADA). Cargill filed a motion for summary judgment, arguing that Randolph cannot establish he is a qualified individual under the ADA. As explained herein, I agree with Cargill that there is not a genuine dispute of material fact, and the defendant is entitled to judgment as a matter of law. Accordingly, I will grant Cargill's motion for summary judgment in its entirety.

## BACKGROUND

Randolph worked as a production operator (a/k/a packer) in Cargill's Packaging and Molding Department from October 9, 2017, to October 10, 2019. ECF No. 45 ¶¶ 1, 75. On April 16, 2018, Randolph reported to the facility's general manager, Andy Kasper, that he was experiencing pain in his back and legs. *Id.* ¶ 7. Kasper reassigned Randolph to assemble boxes, but shortly thereafter, Randolph reported an inability to perform additional work and left early. *Id.* ¶¶ 8–9. Randolph returned to work the following day with a doctor's note restricting

him to "light" duty. *Id.* ¶¶ 10–12. The note did not provide any specific lifting restrictions or give other limitations beyond "light duty." *Id.* ¶ 12. Cargill assigned Randolph some duties including repackaging chocolate, cleaning molding machines and labeling products, but the parties dispute whether these assignments constituted "light duty." *Id.* ¶ 16.

On April 27, 2018, Randolph provided updated restrictions from his physician, which limited him to lifting a maximum of ten pounds, occasional walking and standing, and no bending or stooping. ECF No. 45 ¶ 19. The physician continued these same restrictions on May 11, May 25, and June 8, 2018. ECF No. 47-3 at 77:7–78:3, 84:5–12, 85:11–24, 86:5–15. Cargill submits that it assigned Randolph to "light duty" but acknowledges that Randolph lifted up to twenty-two pounds doing work on the tray line. ECF No. 45 ¶¶ 20–22. Randolph claims that his assigned duties exceeded the medical restrictions established on April 27th because he had to lift more than twenty-two pounds, as well as bend and reach above his head to lift the twenty-two-pound trays. *See id.* Around this timeframe, Cargill also assigned Randolph trash removal duties, but Randolph reported that this work also exceeded his limitations, and Cargill assigned him mopping duties thereafter. *See id.* ¶ 25.

Cargill's proposed findings of fact allege a grievance meeting occurred with Randolph's Union representative in May 2018. *See id.* ¶¶ 31–35. Randolph disputes this, conceding only that the Union representative complained about Randolph's work restrictions in mid-May. *See id.* ¶ 31. Cargill contends that Kasper, the general manager, and Cheryl Hildebran, the environmental health and safety manager, advised Randolph during the grievance meeting to carry a copy of his workplace restrictions to show anyone who asked him to perform contradictory work. *Id.* ¶ 35. Despite the fact that Randolph confirmed this during his deposition, Randolph now disputes this finding of fact in the summary judgment

materials, claiming it was his Union representative who told him to carry the workplace restrictions, while Kasper and Hildebran did not support the suggestion. *Compare* ECF No. 47-3 at 88:8–19, *with* ECF No. 45 ¶ 35.

In any event, on June 22, Randolph's physician modified his lifting restriction to twenty pounds with "frequent" lifting and/or carrying up to ten pounds; the physician also permitted frequent walking and standing and removed the prohibition on bending and stooping. ECF No. 47-3 at 94:19–95:15. Randolph also filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) on June 22, 2018. ECF No. 45 ¶ 30.

On July 13, Randolph's physician provided a note indicating that he would be unable to return to work for two weeks. ECF Nos. 45 ¶ 41, 47-3 at 97:1–13. Randolph's physician released him to work on July 25, with the following restrictions: work for up to four hours per day, ten-pound lifting and pulling limitation, no repetitive lifting over five pounds, no lifting above shoulder height, and no squatting, kneeling, or bending. ECF No. 45 ¶¶ 42–43. On July 30, Randolph returned to work four-hour days under these new restrictions. *Id.* ¶ 44.

On or around August 8, 2018, a manager asked Randolph to perform work on the tray line, but Randolph responded that he could not do so because he did not want to bend and stoop. ECF No. 47-3 at 121:7–12. Randolph recounts that the manager came back later to advise Randolph that he "was no longer useful in the warehouse until [he was] 100 percent healthy." *Id.* at 121:13–16. The manager advised Randolph that the light duty tasks were complete and that Cargill could not accommodate Randolph's restrictions because it did not have any work that would allow him not to bend, stoop, or pick up heavy things. *Id.* at 121:16–21. Accordingly, Cargill placed Randolph on leave, and Randolph did not return to work after August 8, 2018. *Id.* at 124:13–14, 127:7–12.

3

On October 1, 2018, Randolph provided updated restrictions for the period from September 12 to October 12, which limited him to working four hours per day, lifting a maximum of ten pounds, repetitive lifting of five pounds, no reaching above shoulder height, and no squatting, kneeling, or bending. ECF No. 45 ¶ 53; ECF No. 47-1 at 13. On January 9, 2019, Randolph presented another update on his restrictions, which limited him to lifting no more than ten pounds, no repetitive lifting/twisting or bending, and primarily seat work. ECF Nos. 43-2 at 6, 45 ¶ 55. In response to this documentation, Cargill employee Aleshia Steele Raschig sent an email to Randolph asking if he "would like to go through the medical accommodation process to see if we can accommodate those restrictions here at work." ECF Nos. 44 at 4, 45 ¶ 56. Randolph denies that he expressed no interest in the accommodation process but acknowledges that he subsequently emailed Raschig about being out on disability and unable to work. ECF No. 45 ¶ 57. Raschig emailed Randolph on March 6, 2019, inquiring whether he had any restrictions to evaluate accommodations and return to work. *Id.* ¶ 59; *see also* ECF No. 43-2 at 4. Randolph subsequently sent documentation placing him out of work for another three works, so Cargill allowed him to remain on leave. ECF No. 45 ¶¶ 62–64. Raschig asked Randolph to provide an update when he received new information regarding his work status. *Id.* ¶ 65.

On August 8, 2019, Raschig contacted Randolph regarding a Final Accommodation Review. *Id.* ¶ 66. Randolph provided a physician's letter stating that he could return to work with the "same restrictions." *Id.* ¶ 67. Because Randolph was scheduled for a MRI on August 15, 2019, Cargill allowed him to remain off work and asked for an update by August 26, 2019. *Id.* ¶¶ 68–69. On September 27 2019, Randolph met with Raschig at Cargill, but they were not able to successfully identify available work within his restrictions. *Id.* ¶¶ 70–73. On

October 3, 2019, Randolph advised Raschig that the insurance company had approved him for long-term disability, and therefore, he wanted an indefinite leave of absence. *Id.* ¶ 74. On October 10, 2019, Cargill terminated Randolph because it determined an indefinite leave of absence was not a reasonable accommodation. ECF No. 45 ¶ 75.

In June 2021, Randolph filed a complaint in federal district court against Cargill, alleging disability discrimination in violation of the ADA. *See* ECF Nos. 1, 15. The clerk randomly assigned the matter to me, and all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 2, 7. After a series of joint requests for extension of time, Cargill filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on October 10, 2024. *See* ECF No. 39. Randolph filed a brief in opposition, ECF No. 44, and Cargill filed a reply brief, ECF No. 49.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [his] favor." *Id.* (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## DISCUSSION

Cargill argues that both of Randolph's claims—failure to accommodate and disability discrimination—fail on the same common element. ECF No. 40 at 10–12, 19. That is, both claims require the plaintiff to establish that he is a "qualified individual" with a disability under the ADA. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013); *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838–39 (7th Cir. 2012). "A 'qualified individual' is one 'who, with or without reasonable accommodation, can perform the essential functions of the employment position.'" *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020) (quoting 42 U.S.C. § 12111(8)). Cargills submits that Randolph was not a qualified individual because he could not perform three essential functions of the packer position, even with reasonable accommodations. ECF No. 40 at 10–12. Randolph contends that these functions

6

were not essential because Cargill could accommodate him with specific job duties that did not require these functions. ECF No. 13–14, 23–24.

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "A job function may be considered essential for any of several reasons, including but not limited to . . . because the reason the position exists is to perform that function" or "because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2)(i)–(ii). "To determine whether a job function is essential, [courts] look to the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those who previously or currently hold the position." *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) (citing 29 C.F.R. § 1630.2(n)(3)); *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001)). Courts "usually do not 'second-guess the employer's judgment in describing the essential requirements for the job.'" *Tonyan*, 966 F.3d at 687–88 (quoting *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998)).

Cargill identifies three essential functions of the packer position relevant to this lawsuit: "(i) the ability to stand and reach regularly with arms and hands; (ii) the ability to regularly walk, stoop, kneel, crouch, and climb stairs; and (iii) the ability to lift objects weighing up to 50 pounds." ECF No. 41 ¶ 5. As the foregoing recitation of Randolph's medical notes conveys, each iteration of Randolph's substantive[1] restrictions precluded him from performing the lifting function, while some precluded one or both of the other two functional categories as well. ECF No. 45 ¶¶ 19, 42–43, 53, 55, 67; ECF No. 43-2 at 6; ECF No. 47-1 at 13; ECF No. 47-3 at 77:7–78:3, 84:5–12, 85:11–24, 86:5–15, 94:19–95:15.

---

[1] The first note simply limited him to "light" work with no description. ECF No. 45 ¶¶ 10–12.

7

Randolph argues that Cargill has not adequately established these functions are essential because it relies on the job description and the opinion of an employee "who has never worked in the position in question." *See* ECF No. 44 at 28. However, the job description is an appropriate tool for courts to consider when determining essential functions. *See Rooney* 410 F.3d at 382. As for the employee who "never worked in the position," that was Raschig—who was responsible for executing the medical accommodation process at Cargill from 2017 to 2021. ECF No. 47-2 at 7:11–24. Cargill also presented Raschig as the Rule 30(b)(6) deponent related to the essential functions of the packer position. *See* ECF No. 47-2. Randolph has not submitted any evidence to contradict Raschig's qualifications. *See generally* ECF No. 44. Randolph actually endorses Raschig's testimony and contends that it undermines Cargill's position because Raschig explained that a packer's duties vary depending on the assigned department. ECF No. 44 at 5. Randolph insists that this variation demonstrates that not all packers had to fulfill the "essential" functions in question. *Id.* at 6. Cargill maintains that the variation exists because packers periodically rotate to different stations or line locations, and therefore, a packer still must be able to perform at the exertional limits defined in the job description. ECF No. 49 at 5–6. "It is entirely proper and permissible for an employer to require as an essential function of a position the ability to rotate through a variety of specific duties. So long as the rotation requirement serves a legitimate business purpose, we will not second guess the employer's decision that the employees rotate through the various tasks." *England v. ENBI Indiana, Inc.,* 102 F. Supp. 2d 1002, 1012 (S.D. Ind. 2000). "[Courts] presume that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." *Gratzl v. Office of Chief*

*Judges of 12th, 18th, 19th, & 22nd Judicial Circuits,* 601 F.3d 674, 679 (7th Cir. 2010) (citing *Basith v. Cook County,* 241 F.3d 919, 927 (7th Cir. 2001)).

Cargill further explains that even though the potential job duties varied across shifts, Randolph has not established the existence of a permanently available role in which the essential functions dovetailed with his restrictions. ECF No. 49 at 5. For example, Randolph argues that there are three distinct roles on the "bindler" line where different packers fill boxes with chocolate, assemble the boxes, and wrap and transport the boxes. ECF No. 44 at 5–6. Randolph suggests that Cargill could have accommodated him by assigning him to box assembly and modifying the location of the boxes so that he would not have to bend. *Id.* at 14. Cargill responds that the distinct line tasks—like wrapping boxes and transporting them for shipping—are job duties, but Randolph has not demonstrated that those duties are all that the packer role requires, nor has he established how heavy the boxes are when stacked and whether these tasks still exceed his lifting and related restrictions. ECF No. 49 at 5. Cargill did not respond directly to Randolph's suggestion that he could work in box assembly. *See generally* ECF No. 49. However, Randolph acknowledges that the boxes would need to be moved in order to accommodate his bending and stooping restrictions, and the record gives no indication that this accommodation is feasible at the facility. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) (noting that the "accommodation must not impose an 'undue hardship' on the employer").

Moreover, Raschig confirmed that packers rotate to different positions rather than staying in the same spot on the lines. *See* ECF No. 47-2 at 15:22–16:2. Randolph himself stated during his deposition that Cargill had a policy whereby employees should only be on the bindler line once per week but that he worked this line up to three times per week. ECF

9

No. 47-3 at 33:20–24. Randolph also referenced performing mopping duties when the tray line was down for weeks. *Id.* at 82:13–23. These instances further support Cargill's position that a specific role on a single line is not an independently available position. Randolph has not provided any evidence that would cause me to question Cargill's business judgment and conclude that an employee could perform only one of the line duties full-time. *See generally* ECF No. 44. In fact, Randolph never suggests that such a narrowly focused position exists at Cargill—only that he could perform particular functions like box assembly. *See id.*

Randolph further contends that the bindler line involves lifting up to forty or fifty pounds, whereas the tray line involves smaller chocolate bars and requires lifting only up to twenty-two pounds. *Id.* at 6. He suggests that there is another line involving chocolates the size of "little pebbles" but offers no evidence about the maximum weightlifting involved. ECF Nos. 44 at 24; 46 ¶ 5. At all relevant times, Randolph's medically imposed lifting restrictions fell below the twenty-two-pound threshold. ECF No. 45 ¶¶ 19, 42–43, 53, 55, 67; ECF No. 43-2 at 6; ECF No. 47-1 at 13; ECF No. 47-3 at 77:7–78:3, 84:5–12, 85:11–24, 86:5–15, 94:19–95:15. Randolph suggests that "minimal" lifting would be required to assemble boxes, but again, he does not provide any evidence to establish that box assembly constitutes an independent role at the company. *See generally* ECF No. 44.

Randolph also maintains that Cargill could have assigned him to visually track and document records of packing boxes. ECF No. 44 at 14. He contends that Cargill accommodated other employees with these light duties but does not offer sufficient supporting evidence. ECF No. 44 at 14. For instance, Randolph contends that Cargill allowed a woman who injured her hand to track and document boxes. ECF Nos. 46 ¶¶ 99–100, 47-3 at 102:4–24. However, Randolph offers no further context or evidence about this potential job, such as

10

whether this work is an ongoing and available need at Cargill. *See generally* ECF No. 44. As Cargill points out, the ADA does not require an employer to convert temporary light-duty tasks into permanent positions, nor does it require employers to "bump" other employees to create a vacancy for a disabled employee. *See* ECF No. 49 at 6; *Gile*, 95 F.3d at 499.

Randolph also points out that Cargill had janitorial, maintenance, quality assurance, and general office positions in addition to the packer position. ECF No. 44 at 14. No doubt. However, Randolph presents no evidence that Cargill had availability in these positions, nor does he offer sufficient evidence to convince a reasonable jury that he could perform these jobs. *See id. generally.* Randolph describes being assigned duties that required him to clean sixty-to-seventy-pound doors and argues that it reflects Cargill's failure to meet his "light duty" restrictions, but this argument suggests that the janitorial and/or maintenance work may not have been suitable for Randolph's restrictions. ECF No. 44 at 7. Similarly, Randolph stated during his deposition that he could not handle the trash cans because they weighed more than his ten-pound restriction allowed him to lift. ECF No. 47-3 at 82:10–13. He presents no further evidence about what the janitorial, maintenance, quality assurance, or office positions entailed and whether he could perform them within his limitations. *See id.* at 7–8.

Ultimately, Randolph does not actually suggest that he could perform the functions identified by Cargill, only that they are not the essential functions for all packers. *See* ECF No. 44 at 22–24. Raschig was unequivocal in her testimony regarding the essential functions of a packer and confirmed that an employee with the various versions of Randolph's restrictions could not perform those functions. ECF No. 47-1 at 18:9–13, 21:17–22:1, 24:6–19, 25:14–19, 27:16–24, 30:3–7. Raschig clarified that Cargill could make work piecing

11

together marginal functions of the job, such as housekeeping or paperwork. *Id.* at 19:9–19, 21:17–22:1. However, Cargill placed Randolph on administrative leave in August 2018 precisely because it did not have enough of these types of lighter duty responsibilities to sustain his employment. ECF No. 47-3 at 121:16–21, 124:13–14, 127:7–12. Randolph's contention that many of the tasks Cargill assigned to him from April to August of 2018 violated his work restrictions further supports Cargill's position that it did not have appropriate work available within his restrictions.

In sum, Randolph has failed to present the court with evidence that, if believed by a trier of fact, would contradict Cargill's description of the essential functions for the packer position. In essence, he is asking the court to second-guess—without evidence—the employer's plausible description of its own job positions. Accordingly, no reasonable jury could find that Randolph was able to perform the essential functions of his job—namely, lifting up to fifty pounds and bending or stooping—with or without accommodations. Thus, Cargill is entitled to summary judgment on Randolph's claims for failure to accommodate and disability discrimination.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the defendant's motion for summary judgment, ECF No. 39. The action is dismissed with prejudice. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 10th day of January, 2025.

_____
STEPHEN C. DRIES
United States Magistrate Judge